UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ANTHONY J. PIETRAFESA,

                Plaintiff

     v.                                                 1:05-CV-1450
                                                          (LEK/RFT)

FIRST AMERICAN REAL ESTATE INFORMATION
SERVICES, INC., d/b/a First American
CREDCO, AEGIS LENDING CORPORATION,
AEGIS MORTGAGE CORPORATION,
"SCOTT DOE," being a person whose real name
is unknown to plaintiff now, Jointly and Severally,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**APPEARANCES:**                               **OF COUNSEL:**

Anthony J. Pietrafesa
26 Palma Avenue
Albany, NY 12203
*Pro Se*

Bartlett, Pontiff, Stewart & Rhodes, P.C.      Eileen M. Haynes, Esq.
One Washington St.
PO Box 2168
Glens Falls NY 12801
*Attorneys for Defendant Credco*

LAWRENCE E. KAHN
United States District Judge

## MEMORANDUM-DECISION AND ORDER

        Plaintiff Anthony Pietrafesa ("Plaintiff") commenced the instant action against

Defendants alleging violations of federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §

1681, et seq., the New York Fair Credit Reporting Act ("NYFCRA"), N.Y. Gen. Bus. Law §

380 et seq., and the New York Consumer Protection Act, N.Y. Gen. Bus. Law § 349. Plaintiff alleges that Defendants obtained a copy of his credit report for an improper purpose. Presently before the Court is Defendant Credco's Motion, and Plaintiff's Cross-Motion, for summary judgment pursuant to Fed. R. Civ. P. 56. Dkt. Nos. 8, 11.

I.     **FACTS**

Credco is an entity engaged in the business of furnishing credit information from the three major credit bureaus. Credco does not maintain credit history information on individual consumers. Rather, at the request of its clients, Credco compiles credit scores from the three credit bureaus into a single, merged report.

Prior to offering services to its clients, Credco requires its clients to sign an agreement and certification providing that the client will not seek credit reports for an improper purpose and only in connection with a "credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collections of an account of the consumer." In approximately 1999, Defendant Aegis applied to Credco to receive the merged reports. As part of the application, Aegis supplied Credco with its business address, identified itself as a wholesale lender, listed the number of employees and its annual revenue, named its officers, and supplied three references. Credco checked the references, ensured that Aegis was in good standing with the Office of the Comptroller in the State of Texas (where Aegis is located), interviewed one of Aegis's senior vice presidents, conducted a physical inspection of Aegis's offices to ensure that it was a bona fide lending institution, and, as a result, determined that Aegis was authorized to obtain credit reports and requested such reports for a legitimate purpose.

Up through August 2005, Aegis had requested that Credco provide "thousands of credit reports." Def.'s Stmnt. of Mat. Facts at ¶ 12. From 1999 through August 2005, Credco had been obtaining credit reports for Aegis for approximately six years and "had received no information that Aegis was requesting reports for improper purposes." Id. at ¶ 13. On or about August 26, 2005, Aegis requested that Credco provide a merged report on Plaintiff. Credco provided the report.

On or about September 9, 2005, Credco received a notice from Aegis that it improperly requested Plaintiff's credit report. Aegis asked that the inquiry be removed from all credit reporting bureaus. Credco investigated Aegis's request. Credco then wrote to each of the three credit bureaus and requested that they remove the inquiry from Plaintiff's credit report. Credco also received notice from Plaintiff that he did not authorize the release of his credit information. Although Credco had already asked the three credit bureaus to remove the inquiry from Plaintiff's credit report, Credco responded to Plaintiff that he should address the matter directly with Aegis.

Plaintiff then commenced the instant action alleging that Credco violated the FCRA, the NYFCRA, and the New York Consumer Protection Laws by obtaining his credit report from the three bureaus, providing that information to Aegis, and failing to provide adequate notice to Plaintiff. Presently before the Court is Credco's Motion for summary judgment pursuant to FED. R. CIV. P. 56 seeking dismissal of the Complaint in its entirety and Plaintiff's Cross-Motion seeking a determination of liability as a matter of law. Dkt. Nos. 8, 11.

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In applying this standard, courts must " 'resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.'"  Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001) (quoting Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001)).  Once the moving party meets its initial burden by demonstrating that no material fact exists for trial, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citations omitted).  Rather, the nonmovant "must come forth with evidence sufficient to allow a reasonable jury to find in her favor."  Brown, 257 F.3d at 251 (citation omitted).  Bald assertions or conjecture unsupported by evidence are insufficient to overcome a motion for summary judgment.  Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991); Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990).

**III.     DISCUSSION**

      **a.     FCRA**

Credco contends that it is entitled to summary judgment because the undisputed facts demonstrate that, as a consumer reporting agency, it complied with the applicable provisions of the FCRA.  Plaintiff responds that he is entitled to summary judgment because Credco is not a "consumer reporting agency," but a "user" of credit reports that obtained a report for an improper purpose.  Thus, the initial inquiry is whether Credco is a user of credit reports or a consumer reporting agency.

The phrase "consumer reporting agency" is statutorily defined to mean

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f). As it is ordinarily used, the term "assemble" means "to bring together; to gather into one place." The Random House Dictionary of the English Language, 1979, at p. 89; see also Oxford English Dict. (2d Ed. 1989) ("To bring together (things) into one place or mass, to collect."). The nature of Credco's business is gathering credit information maintained by the three credit bureaus and providing that information in a single merged report to its clients. As such, its conduct constitutes "assembling." See Morrissey v. TRW Credit Data, 434 F. Supp 1107, 1108 (E.D.N.Y. 1977). Credco also qualifies as a "reseller" of consumer reports. See Credit Chequers Info, Servs., Inc. v. CBA, Inc., NO. 98 CIV. 3868(RPP), 1999 WL 253600, at *2 (S.D.N.Y. Apr. 29, 1999) (an entity that provides merged credit reports identical to the reports provided by Credco here is a "reseller of credit reporting services."). The FCRA defines the terms "reseller" to mean "a consumer reporting agency that (1) assembles and merges information contained in the database of another consumer reporting agency or multiple consumer reporting agencies concerning any consumer for purposes of furnishing such information to any third party. . .; and (2) does not maintain a database of the assembled or merged information from which new consumer reports are produced." 15 U.S.C. § 1681a(u). Thus, to be a reseller, one must be: (1) a consumer reporting agency, see Poore v. Sterling Testing Sys., Inc., 410 F. Supp.2d 557, 566-67 (E.D. Ky. 2006), (2) that assembles and merges information maintained in the databases of other

- 5 -

consumer reporting agencies, and (3) that does not maintain its own databases of consumer information. 15 U.S.C. § 1681e(e),

As a consumer reporting agency, Credco is obligated to comply with, among other things, the requirements of 15 U.S.C. §§ 1681b and 1681e(a)-(d). As is relevant hereto, § 1681b(a)(3) permits a consumer report to be furnished only "[t]o a person which it has reason to believe - (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer." Section 1681e requires consumer reporting agencies to "maintain reasonable procedures designed to avoid violations of section 1681c of this title and to limit the furnishing of consumer reports to the purposes listed under section 1681b of this title." 15 U.S.C. § 1681e(a). These reasonable procedures must include a requirement that the prospective users of information: (1) identify themselves; (2) certify the purposes for which the information is sought; and (3) certify that the information will be used for no other purpose. Id. Consumer reporting agencies also are required to "make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report." Id. Consumer reporting agencies are prohibited from furnishing a report "to any person if it has reasonable grounds for believing that the consumer report will not be used for a purpose listed in section 1681b. . . ." Id. Civil liability can be imposed upon someone who is negligent in failing to comply with the requirements of the FCRA. 15 U.S.C. § 1681o. "The fact that a consumer report is furnished for an impermissible purpose . . . does not result in automatic liability. Liability is imposed only when the consumer reporting agency either willfully or

negligently fails to maintain reasonable procedures to avoid violations of, i.e., § 1681b." Dobson v. Holloway, 828 F. Supp. 975, 977 (M.D. Ga.1993) (internal citations omitted).

The undisputed evidence before the Court demonstrates that Credco complied with all of these requirements.  Before accepting Aegis as a client, Credco verified Aegis's identity by requiring a completed application, verifying its status with the Office of the Comptroller of the State of Texas, checking into its line of business, conducting a physical inspection of Aegis's business, and checking Aegis's references.  Credco learned that Aegis was a real estate loan company.  These actions by Credco constitute reasonable efforts to verify Aegis's identity and the use for which Aegis intended to use the consumer reports.  The evidence in the record further demonstrates that Credco complied with § 1681e by requiring Aegis to: identify itself, certify the purpose for which the information was sought, and certify that the information would be used for no other purpose.  Plaintiff offers no evidence upon which it reasonably can be concluded that Credco had reason to believe that Aegis would obtain a consumer report for an improper purpose.  To the contrary, the record evidence demonstrates that Credco had supplied Aegis with thousands of credit reports over an approximately six (6) year period without incident.  Thus, Credco had no reason to believe that Aegis sought a credit report for a improper purpose.

Plaintiff has failed to identify any deviations from the standard of care to be used by credit reporting agencies in maintaining reasonable procedures to comply with §§ 1681b and 1681c.  See 15 U.S.C. § 1681o; Dobson, 828 F. Supp. at 977 ("To determine whether the consumer reporting agency maintained reasonable procedures, the standard of conduct is what a reasonably prudent person would do under the circumstances."); see also Obabueki v. Int'l Bus. Machines Corp., 145 F. Supp. 2d 371, 395-96 (S.D.N.Y. 2001) (liability may be

imposed upon a credit reporting agency for failing to act reasonably in complying with the FCRA).  It would be unreasonable to require credit reporting agencies processing a high number of requests to independently investigate each and every request to determine its legitimacy.  See Boothe v. TRW Credit Data, 557 F. Supp. 66, 71 (S.D.N.Y. 1982).

Because Credco also qualifies as a reseller of consumer reports, it had additional obligations imposed upon it pursuant to § 1681e(e).  Under § 1681e(e)(1), Credco was required to disclose to the "consumer reporting agency that originally furnish[ed] the report - (A) the identity of the end-user of the report (or information); and (B) each permissible purpose under section 1681b of this title for which the report is furnished to the end-user of the report."  Section 1681e(e)(2) further required Credco to:

> (A) establish and comply with reasonable procedures designed to ensure that the report (or information) is resold by the person only for a purpose for which the report may be furnished under section 1681b of this title, including by requiring that each person to which the report (or information) is resold and that resells or provides the report (or information) to any other person–
>
> (I) identifies each end user of the resold report (or information);
>
> (ii) certifies each purpose for which the report (or information) will be used; and
>
> (iii) certifies that the report (or information) will be used for no other purpose; and
>
> (B) before reselling the report, make reasonable efforts to verify the identifications and certifications made under subparagraph (A).

The evidence discussed above concerning Credco's compliance with § 1681b equally applies to demonstrate Credco's compliance with § 1681e(e)(2).  As noted, Credco had a reasonable procedure to ensure that Aegis was using credit reports for a proper purpose and had information that Aegis was the end user of the resold report.  Moreover, Aegis, as the

end user, certified the purpose for which the report was used, and certified that the report would not be used for any other purpose.

There is, however, an absence of evidence in the record concerning whether Credco complied with § 1681e(1)(B). It is unknown whether Credco informed the three credit bureaus from which it obtained the credit information concerning Plaintiff of "each permissible purpose under section 1681b of this title for which the report is furnished to the end-user of the report." See 15 U.S.C. § 1681e(e)(1)(B). Accordingly, the Court cannot determine on the present record whether: (1) Credco negligently failed to comply with § 1681e(e)(1)(B); and, if so, (2) Plaintiff sustained any actual damages as a result of the failure. See 15 U.S.C. § 1681o(a). Credco's Motion for summary judgment on the FCRA claim must, therefore, be denied.

### b.     NYFCRA

The Court will now turn to Plaintiff's claims under N.Y. Gen. Bus. Law Art. 25. As is relevant hereto, the requirements of Article 25 are substantially similar to those under the FCRA. See Scott v. Real Estate Fin. Group, 183 F.3d 97, 100 (2d Cir. 1999). There is a difference between the two statutes, however, insofar as Article 25 does not contain additional requirements applicable to resellers as does the FCRA. For the reasons previously discussed with respect to Credco's compliance with §§1681b and 1681e(a)-(d) of the FCRA, because Credco maintained "reasonable procedures to designed to avoid violations of sections three hundred eighty-b and three hundred eighty-j of this article and to limit the furnishing of consumer reports to the purposes listed under said section three hundred eighty-b," the claims under N.Y. Gen. Bus. Law §§ 380-b(a), 380-k must be dismissed.

> N.Y. Gen. Bus. Law § 380-b(b) further provides that:
>
> No person shall request a consumer report . . . in connection with an application . . . for credit, . . . unless the applicant is first informed in writing or in the same manner in which the application is made that (I) a consumer report may be requested in connection with such application, and (ii) the applicant upon request will be informed whether or not a consumer report was requested, and if such report was requested, informed of the name and address of the consumer reporting agency that furnished the report.

N.Y. Gen. Bus. Law § 380-b(b). There is no evidence in the record that Credco complied with this requirement. Indeed, looking at the evidence in the light most favorable to the nonmovant, it appears that Credco did not inform Plaintiff that it intended to request a consumer report.

That being said, the Court concludes that § 380-b(b) is inapplicable here. By its plain terms, § 380-b(b) applies to requests for a consumer report "in connection with an application . . . for credit." When such a request is made, notice must be given to "the applicant" that a consumer report may be requested "in connection with such application." It is arguable that Aegis's request for a consumer report was "in connection with an application for credit." After all, this was the purported basis for Aegis's request for the credit report. Nevertheless, as Plaintiff states, he "did not initiate any business transaction, *or apply for credit* . . . by or through Credco" or any other Defendant. Pl.'s Stmnt. of Mat. Facts at ¶¶ 11-12 (emphasis added); Compl. at ¶ 8. As such, strictly adhering to the text of the statute, Plaintiff cannot be an "applicant" to whom notice is required to be given. See N.Y. STAT. LAW § 73 ("A statute must be read and given effect as it is written by the Legislature, not as the court may think it should or would have been written if the Legislature had envisaged all of the problems and complications which might arise in the course of its administration; and no

matter what disastrous consequences may result from following the expressed intent of the Legislature, the Judiciary cannot avoid its duty. . . . Under the foregoing principle . . . courts may not . . . change the scope of a legislative enactment"); N.Y. STAT. LAW § 94 ("The Legislature is presumed to mean what it says. . . . In the construction of statutes, each word in the statute must be given its appropriate meaning. . . . Words will not be expanded so as to enlarge their meaning to something which the Legislature could easily have expressed but did not. . . ."); N.Y. STAT. LAW § 230 ("[E]ach word or phrase in the enactment must be given its appropriate meaning.).

The conclusion that § 380-b(b) does not apply to the situation where, as here, there is no actual application is supported by comparing § 380-b(b) (requiring notice for consumer reports) with §§ 380-c(a) and 380-c(b) (requiring notice for investigative consumer reports). Section 380-b(b) specifically refers to providing notice to the "applicant," whereas § 380-c(a) requires that notice be given to "the consumer." It must be assumed that when enacting Article 25, the legislature intentionally used two different terms in the two different sections. N.Y. STAT. LAW § 98 ("[T]he court must assume that the Legislature did not deliberately place in the statute a phrase intended to serve no purpose, but must read each word and give to it a distinct and consistent meaning."); N.Y. STAT. LAW § 97 ("Statutory words must be read in their context, and words . . . of a statutory section should be interpreted with reference to the scheme of the entire section. . . . The different parts of the same act, though contained in difference sections, are to be construed together as if they were all in the same section.").

Furthermore, § 380-c(b) expressly contemplates the type of notice to be provided in the situation where no application is made. That section provides that "[t]he notice required by this section shall be in writing *if a written application is made by the consumer*, or may be

- 11 -

in writing or orally *in all other circumstances*." § 380-c(b)(emphases added).  By contrast, § 380-b(b) does not provide for situations where there is no application.  In light of the fact that the Legislature expressly considered the situation where there is no application with respect to investigative consumer reports, the failure to include a similar provision in § 380-b(b) cannot be considered a legislative oversight, but, rather must be presumed to be an intentional omission.  See N.Y. STAT. LAW § 74 ("[W]hen from the language of an act and circumstances surrounding its enactment it appears that the Legislature has specified the cases to which it shall apply, the failure to specify a particular case indicates that the Legislature did not intend the act to cover such a case. . . .").  This conclusion is even more forceful considering that, under the NYFCRA, the term "consumer" is a statutorily defined term, see § 380-a(b), that is purposefully and intentionally used throughout Article 25, but was not used in § 380-b(b).  Because Plaintiff was not an "applicant," he was not entitled to notice under § 380-b(b).

Furthermore, the Court finds that § 380-b(b) was not intended to apply to every person or entity involved in the process of obtaining a consumer report.  See Scott v. Real Estate Fin. Group, 956 F. Supp. 375, 385 (E.D.N.Y. 1997) ("[T]he Court finds that the language contained in the statute does not require notice from everyone involved in obtaining the consumer report."), aff'd in part, rev'd in part, 183 F.3d 97 (2d Cir. 1999).  Without question, the end-user of the consumer report is subject to § 380-b(b)'s requirements.  The purpose of § 380-b(b) is to require the end-user (that is, those who intend to use the credit report for making determinations concerning employment, the extension of credit, the provision of insurance, or the rental or leasing of a residence) to inform the applicant that end-user may request a consumer report as part of the decision-making process.  It is the

end-user who ordinarily has a direct relationship with the consumer and, therefore, is in a position to provide notice concerning the intention to obtain a consumer report.  By requiring the end-user to provide this information at the time of the application for credit, employment, insurance, or the rental or lease of an apartment, the consumer is in a position to determine whether to proceed with the application.  This would appear to satisfy the policy reasons behind the notice provision - to enable consumers to know under what situations consumer reports concerning them will be obtained and to permit the consumer to discontinue the application process if they do not want their consumer report to be disclosed.  Taking into consideration these purposes of § 380-b(b), the question is whether § 380-b(b) also was intended to apply to require resellers (those who obtain the consumer report from another consumer reporting agency or multiple consumer reporting agencies) to provide notice to the consumer where the end-user seeks to obtain a consumer report through that reseller.

It is common practice for the end-users of consumer reports to obtain the reports through a middleman or reseller.  As previously discussed, the FCRA expressly contemplates this situation.  By the time a request for a consumer report is made to a reseller, the requirements of § 380-b(b) already should have been complied with by the end-user.  Under such circumstances, it makes little sense to require the middleman, or reseller, to also provide notice to the consumer before obtaining the report that has already been requested by the end-user.  Such notice would be superfluous.  It also would be extremely onerous on resellers to require that they notify every consumer about whom they receive a request to obtain a consumer report.

Most significantly, perhaps, the statute prohibits requesting a consumer report "unless the applicant is first informed" that a consumer report may be requested. § 380-b(b).

The required notice informs the "applicant" that "a consumer report *may* be requested in connection with such application." § 380-b(b) (emphasis added). By the time the matter gets to a reseller, a consumer report already *has* been requested (at least by the end-user) and, thus, any notice provided by the reseller would be after the time contemplated by the statute. Notice provided by a reseller would not fulfill the above-discussed policy reasons of affording the applicant an opportunity to discontinue the application process and preventing the request and/or disclosure of his or her consumer report. For these reasons, the Court finds that § 380-b(b) is inapplicable here. The NYFCRA claims are, therefore, dismissed.

        c.      **New York Consumer Protection Law**

Plaintiff also asserts a claim under N.Y. Gen. Bus Law § 349, which makes it unlawful to engage in deceptive acts or practices in the conduct of any business or in the furnishing of any service in New York state. See N.Y. GEN. BUS LAW § 349 To recover under this section, Plaintiff must demonstrate that he suffered actual injury as a result of a practice that was objectively misleading or deceptive. Pelman ex rel. Pelman v. McDonald's Corp., 396 F.3d 508, 511 n.4 (2d Cir. 2005). As the New York Court of Appeals has stated, "[a] plaintiff under section 349 must prove three elements: first, that the challenged act or practice was consumer oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered actual injury as a result of the deceptive act." Stutman v. Chemical Bank, 95 N.Y.2d 24, 29 (2000).

Defendant moves for summary judgment on the ground that there is no evidence that it engaged in any materially misleading or deceptive acts. In response, Plaintiff merely contends that a violation of the NYFCRA or FCRA can sustain a claim under § 349. While certain acts may constitute a violation of both the FCRA and § 349, see, e.g., Wegmans

Food Markets Inc. v. Scrimphsher (In re Scrimpsher), 17 B.R. 999 (Bankr. N.D.N.Y. 1982), here, Plaintiff has failed to identify any consumer oriented, misleading acts by Credco. Accordingly, the § 349 claim must be dismissed.

## IV.     CONCLUSION

Accordingly, it is hereby

**ORDERED**, that Defendants' Motion for summary judgment (Dkt. No. 8) is **GRANTED IN PART** and **DENIED IN PART**.  Defendants' Motion is **GRANTED** insofar as all of Plaintiff's claims are **DISMISSED** with the exception of the claim under § 1681e(1)(B) of the FCRA; and it is further

**ORDERED**, that Plaintiff's Cross-Motion for summary judgment (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on all parties by regular mail.

**IT IS SO ORDERED.**

DATED:   March 06, 2007
              Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge